IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Sean Paul Swain,                      Case No. 3:09 CV 2659

           Plaintiff,                MEMORANDUM OPINION
                                        AND ORDER
    -vs-
                                        JUDGE JACK ZOUHARY
William Fullenkamp, et al.,

           Defendants.

*Pro se* Plaintiff Sean Paul Swain filed this action under 42 U.S.C. § 1983 against Toledo Correctional Institution ("TCI") Mail Room Supervisor William Fullenkamp, former Warden Carl Anderson, Institutional Inspector Bill Bartleson, Rules Infraction Board ("RIB") Secretary Patricia Ceglio, Local Control Committee Member Sarah Cox, Local Control Committee Member Terrie Ellis, RIB Member Richard Filas, Major Keith Foley, RIB Chair S. R. Hahn, Cashier Mary Holloway, Local Control Committee Member T. Holmes, Vault Supervisor Sergeant House, Library Supervisor Linda Meeks, Segregation Unit Sergeant Ricki Nolen, Warden's Assistant Meredith Rinna, Deputy Warden of Operations Ray Schaublin, Librarian Rose Shaddy, former Deputy Warden Keith Smith, Investigator William Underwood, RIB Member Jane Doe, Mail Room Worker John Doe, Ohio Department of Rehabilitation and Correction ("ODRC") former Director Terry Collins, ODRC Chief Inspector Gary Croft, and ODRC Regional Director Khelleh Konteh. Swain alleges prison officials subjected him to disciplinary action based on the content of an article he wrote. He seeks monetary and injunctive relief.

**BACKGROUND**

Swain authored several articles from prison which promote anarchy and rebellion against authority. These writings were mailed to sources outside of the prison. Among these articles were "Application of Anarchist Theory to the Modern-Day Prison Struggle," "Last Act of the Circus Animals," and "FREEDOM: The Insight, Rage, [and] Fury of Political Prisoner Sean Swain" (Doc. No. 1, Ex A, pp. 3-4). This last article was published in the *Conditions Factory* in 2007 and was brought to the attention of prison authorities. Swain was charged with a disciplinary infraction based on the content of the article.

Prison authorities believed the writings were intended to incite other prisoners to engage in a group demonstration, especially a passage dedicated to readers who would like to "get dangerous." That passage read:

> Your happiness and well-being will require you to reject the rigid structures and hierarchies and systems of exploitation that humiliate and reduce you. In other words, you'll turn your back on the pyramid and tell the slave-driver to hoist his own fucking stones. . . . no control system can stand without the consent of the governed. . . .To give you an example, if Ohio prisoners laid on their bunks for 30 days, we wouldn't get just $286 a month, we'd get whatever in the hell we asked for. . . . We're all Viet Cong. We are all occupied and subjugated and invaded and under attack in fundamental ways. We just have to start acting like we're Viet Cong."

(Doc. No. 1, Ex. A, pp. 4-5). Based on this passage, Swain was charged with encouraging a prison work stoppage (Doc. No. 1, Ex. D).

Swain disputed the charge. He claimed he was not the author of the article; rather, he simply gave an interview which was incorporated into a published work. He argued the article was written a year earlier, and there was no proof it was read by other inmates. He also claimed his target audience was college students, not prisoners, and he disputed the article encouraged prisoners to strike. The RIB disagreed, as did Warden Carl Anderson in ruling on Swain's appeal. Anderson noted

2

the article appeared to be written by Swain, as it contained the pronouns "I" and "we" to discuss Swain's personal history and views of incarceration, and that even if Swain did not write the actual article, he had violated prison rules by giving an interview to the media without prior approval of prison authorities. Inmates in TCI as well as inmates in other institutions around the state were found to have the article in their possession, and Anderson concluded there was sufficient evidence to support the disciplinary charge (Doc. No. 1, Exs. K-L).

Although Swain lists twenty-two claims in his pleading, they can be condensed into six basic causes of action: (1) his right to free speech was violated when his article was confiscated and he was disciplined for the content of his writings; (2) he was denied due process in his RIB hearings; (3) he was denied equal protection; (4) he was denied access to the courts when Defendants opened his mail and denied him grievance forms; (5) he was subjected to cruel and unusual punishment by his placement in extended administrative segregation; and (6) Defendants violated his rights under various international treaties. In addition to these claims, Swain alleges Smith, Anderson, Konteh, Bartleson, Croft, Holloway, Meeks, Shaddy, Rinna, Schaublin, and Collins (all administrators in the prison system) created policies and procedures to deny his rights and failed to stop the alleged violations.

## DISCUSSION

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam), the district court is required to dismiss an *in forma pauperis* action under 28 U.S.C. § 1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact. *McGore v. Wrigglesworth*, 114 F.3d 601, 608-09 (6th Cir. 1997) (overruled on

3

other grounds by *Jones v. Bock*, 549 U.S. 199 (2007)). For the reasons stated below, this action is dismissed pursuant to Section 1915(e).

### Freedom of Speech

Swain asserts he was disciplined for the content of an article he helped to produce, in violation of the First Amendment. Though incarceration does not completely deprive prisoners of constitutional protections, prisoners have more limited rights than individuals in society at large. *Shaw v. Murphy*, 532 U.S. 223, 228-29 (2001). "In the First Amendment context . . . some rights are simply inconsistent with the status of a prisoner or 'with the legitimate penological objectives of the corrections system.'" *Id.* at 229 (quoting *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). In reviewing First Amendment claims of prisoners, the court should uphold a prison regulation if it is reasonably related to legitimate penological interests. *Id.* (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). Swain was disciplined for speech, arguably directed to other inmates, in which he proposed that Ohio prisoners lay on their bunks for thirty days to get "whatever in the hell we asked for" and suggested "<u>acting</u> like we're Viet Cong" (Doc. No. 1, Ex. A, p. 5) (emphasis in original). The RIB board and the Warden reasonably construed these writings as encouraging Ohio inmates to defy prison authorities. Therefore, disciplining Swain for distributing this speech was reasonably related to legitimate penological interests in maintaining order and ensuring stability in the prison.

### Due Process

Swain also claims he was denied due process in his RIB hearings, which resulted in a seventy-day period of segregation. Only those deprivations of life, liberty, or property which are conducted without due process will support a claim under Section 1983. *Harris v. City of Akron*, 20 F.3d 1396, 1401 (6th Cir. 1994). Prisoners have narrower liberty interests than other citizens, as "lawful

4

incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Sandin v. Conner*, 515 U.S. 472, 485 (1995) (internal quotation omitted). Generally, a prisoner has no liberty interest "in avoiding transfer to more adverse conditions of confinement." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Thus, unless placement in disciplinary confinement is accompanied by a withdrawal of good time credits or presents an unusual hardship on the inmate, no liberty interest is implicated. *Sandin*, 515 U.S. at 478, 484. For example, temporary placement in disciplinary confinement is "within the range of confinement normally expected for one serving an indeterminate term of 30 years to life," and therefore does not give rise to a protected liberty interest. *Sandin*, 515 U.S. at 487.

Here, there is no allegation Swain was sanctioned with the loss of good time credits. Swain's placement in segregation for a period of seventy days does not impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. Therefore, Swain has not sufficiently pled an infringement of his liberty interest.

Even if Swain's claim implicated a liberty interest, his allegations do not suggest he was denied due process. In the prison discipline context, due process requires that a prisoner receive: (1) written notice of the hearing at least twenty-four hours in advance; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reason for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974). Further, "some evidence" must exist to support the disciplinary conviction. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985).

Here, the documents attached to the Complaint show Swain was given notice of the hearing, and there is no indication he was prevented from presenting a defense. He was given a written statement of the decision, which included the evidence on which the RIB relied. He was also permitted to appeal that decision, even after he missed the deadline to file the appeal. The Warden's decision on his appeal recited in detail the specific passages used to support the RIB's finding of guilt. Thus, because the hearing board's decision complied with procedural requirements and was supported by some evidence, Swain was afforded due process.

**Equal Protection**

The Complaint is peppered with allegations that Defendants denied Swain equal protection, but it provides no facts to support such assertions. Under Federal Civil Rule 8(a)(2), a complaint must contain a short, plain statement of the claim showing the plaintiff is entitled to relief. *Ashcroft v. Iqbal* , 129 S. Ct. 1937, 1949 (2009). The pleading standard in Rule 8 does not require detailed factual allegations, but it demands more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* A pleading offering "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not meet the requirements of Rule 8. *Id.* Swain's equal protection allegations, stated solely as legal conclusions, do not state a valid claim.

**Access to the Courts**

Swain contends Defendants denied him access to the courts by interfering with his mail, reducing his access to the law library, and denying him grievance forms. Prisoners have a constitutional right of access to the courts. *See Lewis v. Casey*, 518 U.S. 343, 354 (1996). To establish a violation of that right, the claimant must demonstrate an "actual injury." *Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005). The injury requirement must relate to the rejection of a

6

non-frivolous direct appeal, habeas corpus petition, or civil rights action. *Lewis*, 518 U.S. at 354. "Impairment of any other litigating capacity is simply one of the incidental, and perfectly constitutional, consequences of conviction and incarceration." *Id.* at 355. Here, Swain does not allege any non-frivolous claims he was prevented from litigating. Swain therefore fails to state a valid access-to-the-court claim.

### Eighth Amendment

Swain also asserts he was subjected to cruel and unusual punishment when he was placed in segregation after the disciplinary hearing. Prison officials may not deprive inmates of "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). To establish a cruel and unusual punishment claim, a plaintiff must show (1) a "sufficiently grave" deprivation occurred, and (2) the officials acted with a "sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). The first element is objective and is measured against "contemporary standards of decency." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). Routine discomforts of prison life do not suffice. *Id.* The second element is subjective and requires a showing that prison officials acted with deliberate indifference to harsh conditions. *Wilson*, 501 U.S. at 303-04. Deliberate indifference is characterized by "obduracy and wantonness, not inadvertence or error in good faith." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

In support of the first element, Swain alleges he was denied writing materials, housed next to mentally ill, unhygienic, and odorous inmates, and subjected to cell and body cavity searches. He also contends officers verbally harassed him. These allegations do not rise to the level of an Eighth Amendment cruel and unusual punishment claim. Swain's allegations at most indicate discomfort, not denial of some element of civilized human existence. *Wilson*, 501 U.S. at 298. Further, verbal

harassment, by itself, does not constitute cruel and unusual punishment. *See Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987). None of the conditions cited by Swain suggest he was subjected to extreme deprivations which trigger Eighth Amendment protections.

Further, Swain fails to allege the subjective deliberate indifference component of a cruel and unusual punishment claim. Even liberally construed, the Complaint contains no allegations indicating Defendants acted with deliberate indifference to Swain's safety. Allegations that Defendants failed to provide him with writing materials or performed a visual body cavity search simply do not support a claim of deliberate indifference.

### International Treaties

Swain also claims Defendants violated his rights under the Universal Declaration of Human Rights, the International Covenant on Civil and Political Rights, the International Covenant on Economic, Social, and Cultural Rights, and the American Declaration on the Rights and Duties of Man. Swain does not have standing to bring these claims, as those treaties do not confer rights upon individual citizens to enforce their provisions. *Guaylupo-Moya v. Gonzales,* 423 F.3d 121, 133 (2d Cir. 2005); *Flores v. S. Peru Copper Corp.*, 414 F.3d 233, 258 (2nd Cir. 2003) ; *Garza v. Lappin*, 253 F.3d 918, 923 (7th Cir. 2001).

### Respondeat Superior

Finally, Swain asserts multiple claims against Smith, Anderson, Konteh, Bartleson, Croft, Holloway, Meeks, Shaddy, Rinna, Schaublin, and Collins (all administrators) for failing to take action to stop the actions of officers they supervise. These claims fail for two reasons. First, as explained above, Swain has failed to allege an underlying constitutional violation that these Defendants failed to stop. Second, "supervisory liability under § 1983 cannot attach [for] a mere failure to act." *Bass*

*v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999). A supervisor's failure to manage, control, or train an offending individual "is not actionable unless the supervisor either encouraged the specific incident of misconduct or . . . directly participated in it." *Shehee v. Luttrell,* 199 F.3d 295, 300 (6th Cir. 1999) (internal quotation omitted). Swain does not allege these Defendants encouraged or directly participated in the conduct giving rise to this Complaint. At most, they answered grievances or ruled on his disciplinary appeals. Responding to a grievance or otherwise participating in the grievance procedure is insufficient to trigger liability under Section 1983. *Id*.

## CONCLUSION

Plaintiff's Motion to Proceed *In Forma Pauperis* (Doc. No. 11) is granted. This action is dismissed pursuant to 28 U.S.C. §1915(e). The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

Plaintiff's Motions for Appointment of Counsel (Doc. No. 3), Reconsideration (Doc. No. 7), to Stay Collection of Filing Fee (Doc. No. 8), to Compel (Doc. No. 9), and for Injunction (Doc. No. 12) are denied.

IT IS SO ORDERED.

                                         s/ *Jack Zouhary*
                                         JACK ZOUHARY
                                         U. S. DISTRICT JUDGE

                                         May 19, 2010